UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAW OFFICES OF ARMAN DABIRI & ASSOCIATES P.L.L.C., *Plaintiff*, v. AGRICULTURAL BANK OF SUDAN, *et al.*, *Defendants*. | Civil Action No. 17-2497 (RDM) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, the Law Offices of Arman Dabiri & Associates, P.L.L.C., is suing the Agricultural Bank of Sudan ("ABS"), the Central Bank of Sudan, the Ministry of Agriculture and Forests, and Salah Edin Hassan Ahmed, the General Manager of ABS, for breach of a retainer agreement. The matter is before the Court on the institutional defendants' motion to dismiss, Dkt. 12, and defendant Ahmed's motion to dismiss, Dkt. 14. For the reasons set forth below, the Court will **GRANT** the institutional defendants' motion to dismiss with respect to the Central Bank of Sudan and the Ministry of Agriculture and Forests and will **DENY** the motion with respect to ABS. The Court will also **DENY** defendant Ahmed's motion to dismiss.

**I. BACKGROUND**

For purposes of the pending motion, the Court accepts as true the facts alleged in the complaint, Dkt. 1. *See Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014); *see also Williams v. Ellerbe*, 317 F. Supp. 3d 144, 146 (D.D.C. 2018).

A.   **Factual Background**

Plaintiff, the Law Offices of Arman Dabiri & Associates, is "a professional limited liability company existing under the laws of, and doing business in, the District of Columbia." Dkt. 1 at 2 (Compl. ¶ 2) (capitalization omitted). "On or about March 2017, [Plaintiff] was contacted by [ABS] through a designated agent, seeking legal representation and legal counsel for [ABS] in the United States." *Id.* at 6 (Compl. ¶ 17). At the time, the United States was "loosening . . . sanctions against Sudan," which had long been designated as "a State Sponsor of Terrorism," "on a probationary basis." *Id.* at 4, 6 (Compl. ¶¶ 10, 16). On April 27, 2017, ABS followed up this inquiry by sending Plaintiff a "Letter of Interest," seeking legal assistance for "establishing relationships with the USA and US financial institutes" and "completing the removal of [US] sanctions." *Id.* at 6 (Compl. ¶ 18) (alteration in original).

On May 5, 2017, ABS and Plaintiff "executed a Retainer Agreement." *Id.* at 7 (Compl. ¶ 19). Although Plaintiff did not attach the retainer agreement to the complaint, the institutional defendants submitted the agreement as an attachment to their motion to dismiss, *see* Dkt. 12-2 (Attachment A).[1] The retainer agreement sets forth the following terms:

1.  Counsel will provide the following services to ABS:
    a.  Serve as the attorney of record and provide legal services in connection with achieving the above state[d] goals for ABS.

---

[1] "A district court may consider documents attached to a motion to dismiss, without converting the motion into a motion for summary judgment, if those documents' authenticity is not disputed, they were referenced in the complaint, and they are 'integral' to one or more of the plaintiff's claims." *Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017) (citing *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)). Here, the retainer agreement is referenced in the complaint and central to Plaintiff's breach of contract claim. Because Plaintiff does not dispute the authenticity of the document—and, in fact, references the attachment in its own briefing—the Court will consider the terms of the retainer agreement for purposes of resolving this motion.

> b. Serve as legal Counsel in any meeting or negotiations between ABS and the United States Government or any of its departments and/or agencies.
>
> c. Serve as legal Counsel in drafting any necessary agreements, accords, treaties or understandings between ABS and the United States Government or any of its departments and/or agencies.
>
> d. Serve as legal counsel in any meeting or negotiations with US financial institutions.
>
> d. Serve as legal Counsel in negotiating, reviewing, drafting/editing of necessary contracts or agreements with US financial institutions.
>
> e. Serve as legal Counsel in any disputes between ABS and the United States Government or any of its departments and/or agencies.
>
> f. Serve as legal Counsel in in any disputes between ABS and US financial institutions and entities.

*Id.* at 3 (Attachment A). The agreement also includes the following provision regarding the "computation of fees" and their payment:

> 3. In consideration for the services rendered and to be rendered on ABS's behalf by Counsel, the ABS hereby agrees to pay a lump sum agreed upon fee. . . .
>
> 4. Counsel will require a retainer of $200,000 USD. The retainer fee will be due immediately to Counsel upon the execution of the "Retainer Agreement" in the manner provided for in attached Appendix A to this Agreement.

*Id.* at 5 (Attachment A). Each page of the retainer agreement bears the stamp of the General Manager of ABS, and the final page is signed by Mr. Ahmed. *See generally id.* (Attachment A).

Plaintiff alleges that, after signing the agreement, it "immediately" began to work on "establishing . . . a banking relationship between ABS and US financial institutions" and "continu[ing] the easing of sanctions against Sudan." Dkt. 1 at 7. (Compl. ¶ 20). To that end, Plaintiff alleges that it performed the following legal services: (1) it "undertook an extensive review of all sanctions as well as all litigation against Sudan including cases by U.S. plaintiffs

3

against Sudan under the terrorism exception to the Foreign Sovereign Immunities Act;" (2) it prepar[ed] for an anticipated trip by various Sudanese officials to Washington, D.C.;" and (3) it "establish[ed] a banking relationship with an identified US Bank for purposes of several anticipated contracts with US companies specializing in irrigation and agricultural equipment." *Id.* at 7, 8, 9 (Compl. ¶¶ 21, 22, 24).

Although ABS "cooperated" with Plaintiff from May to July 2017 by "providing the necessary documents for establishing [a] financial and banking relationship with an identified US Bank," *id.* at 8 (Compl. ¶ 22), the relationship quickly soured. ABS informed Plaintiff that its payment of the $200,000 retainer would be temporarily delayed "due to alleged problems with obtaining hard currency from the Central Bank of Sudan." *Id.* (Compl. ¶ 23). Nevertheless, ABS allegedly "requested" that Plaintiff continue its work "based on promises and assurances that payment pursuant to the retainer agreement would be forthcoming." *Id.* No payments, however, were provided to Plaintiff even after "a full banking relationship was established between ABS and a US Banking institution" on July 7, 2017. *Id.* at 9 (Compl. ¶¶ 24, 25). Instead, "ABS (and its designated agent) . . . provid[ed] contradictory information regarding the timing of payment," *id.* (Compl. ¶ 25), and, eventually, "stopped responding to [P]laintiff" despite "several reports and demand letters" that Plaintiff sent between July and September 2017, *id.* (Compl. ¶ 26).

On September 15, 2017, Plaintiff sent a final demand letter "for the outstanding fees pursuant to the retainer agreement to the General [M]anager of the ABS as well as the newly appointed Minister of Agriculture and Forests in Sudan." *Id.* (Compl. ¶ 28). Receiving no response, Plaintiff filed this lawsuit on November 1, 2017, for breach of contract, seeking a total of $200,000 plus interest. *Id.* at 10 (Compl. ¶ 29). Both sets of defendants now move to dismiss

4

the case for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), insufficient service of process, Fed. R. Civ. P. 12(b)(5), and failure to state a claim, Fed. R. Civ. P. 12(b)(6). Dkt. 12 at 1; Dkt. 14 at 1.

**B.      Statutory Background**

Under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, a foreign state, including its instrumentalities, is immune from suit in state or federal court unless the plaintiff's claims fall within an express statutory exception. *See Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004). For present purposes, the sole relevant exception is found in the "commercial activity exception," 28 U.S.C. § 1605(a)(2), which confers subject-matter jurisdiction on federal courts to hear, *inter alia*, an action "based upon a commercial activity carried on in the United States by a foreign State," *id.*; *see also* 28 U.S.C. § 1330(a). The parties dispute whether entering into, and allegedly breaching, a retainer agreement with a D.C. law office is a commercial activity that falls under the exception. *Compare* Dkt. 12-1 at 19 ("The commercial activity exception does not apply, as the basis for the Retainer Agreement was to assist with what appear to be governmental functions."), *with* Dkt 13 at 12 ("The hiring of legal counsel is clearly a commercial activity . . . .").

The FSIA also addresses personal jurisdiction and specifies precise procedures that a plaintiff must follow—at times with the assistance of the clerk of the court and the U.S. Department of State—to effect service on a foreign state and its instrumentalities. *See* 28 U.S.C. § 1608. Here, the parties agree that service should have been effectuated pursuant to § 1608(a)(3), which states:

> Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state . . . by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail

> requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned . . . .

*Id.* District courts have personal jurisdiction over a foreign state if, and only if, the foreign state is served in conformity with § 1608, and the court has subject-matter jurisdiction pursuant to §§ 1605–1607. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89 (D.C. Cir. 2002); 28 U.S.C. § 1330(b).

## II. LEGAL STANDARD

A motion to dismiss brought under Rule 12(b)(1) of the Federal Rules of Civil procedure challenges the Court's subject-matter jurisdiction. Plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Rule 12(b)(5) governs motions to dismiss for insufficient service of process. Plaintiff bears the burden of proving that it effectuated proper service. *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007) (citing *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002)). Failure to effect proper service is grounds for dismissal. *See id.* at 164. However, the Court can, "in its sound discretion," also "direct that service be effected within a particular period of time." *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 (D.D.C. 2004) (citing Fed. R. Civ. P. 4(m)).

Finally, a motion to dismiss brought under Rule 12(b)(6) is designed to "test[] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead

to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (internal citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### III. ANALYSIS

**A.  Institutional Defendants' Motion to Dismiss**

ABS advances three grounds for dismissal on behalf of the institutional defendants: (1) Plaintiff failed to comply with the service requirements set forth in § 1608(a)(3); (2) defendants are entitled to sovereign immunity from suit under the FSIA; and (3) Plaintiff has failed to state a claim for breach of contract. Although the Court agrees that Plaintiff has not yet perfected service of process on any of the defendants, the Court will provide Plaintiff with a further opportunity to correct the technical defects in its efforts to serve ABS and Ahmed. Because the Central Bank of Sudan and the Ministry of Agriculture and Forests are not parties to the retainer agreement, however, the Court concludes that it lacks subject-matter jurisdiction over those defendants, and thus, any further efforts to effect service would be futile.

  1.  *Service*

ABS contends that, because "Plaintiff did not strictly comply with § 1608(a)(3) and serve the head of ministry of foreign affairs of Sudan," and, instead, addressed the mailings to each defendant using the address for the ministry of foreign affairs, "Plaintiff's complaint should be

7

dismissed." Dkt. 12-1 at 17; *see also* Dkt. 4 (Aff. Requesting Foreign Mailing to ABS); Dkt. 6 (Aff. Requesting Foreign Mailing to Ministry of Agric. and Forests); Dkt. 7 (Aff. Requesting Foreign Mailing to Central Bank of Sudan); Dkt. 9 (Certificate of Clerk). Plaintiff responds that the case law in the D.C. Circuit establishes that "mailing to the Ministry of Foreign Affairs constitutes strict compliance with the requirements" of § 1608(a)(3), regardless of the addressee. Dkt. 13 at 10 (citing *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 28 (D.C. Cir. 2015); *Transaero, Inc. v. Furez Area Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994)). The Court agrees with ABS that Plaintiff failed strictly to comply with service requirements under § 1608(a)(3). Nevertheless, the Court will, in its discretion, allow Plaintiff the opportunity to perfect service.

The D.C. Circuit has long held that "strict adherence to the terms of 1608(a) is required." *Transaero, Inc.*, 30 F.3d at 154. Although Plaintiff argues that it is "common practice" to include "the name of each defendant in the address," Dkt. 13 at 10, nothing in the language of § 1608(a)(3) or case law allows *substituting* the name of the defendant for the name or title of the minister of foreign affairs. To the contrary, the D.C. Circuit held in *Barot*—a case Plaintiff itself relies on—that § 1608(a)(3) requires the following:

> [S]erving a summons, complaint, and notice of suit . . . along with any necessary translations, that are "dispatched by the clerk of the court," and sent to the "head of the ministry of foreign affairs" . . . *whether identified by name or title, and not to any other official or agency*.

785 F.3d at 30 (emphasis added) (internal citations omitted); *see also id.* at 29 ("The defect . . . came down to one line of the address block: it should have said "Head of the Ministry of Foreign Affairs . . . ."). In *Barot*, service was ineffective under § 1608(a)(3) because the required materials, although sent to the correct Post Office Box, were addressed to the "Embassy of Zambia," and not to the "Head of the Ministry of Foreign Affairs." *Id.* at 29.

The defects in the present case are on all fours with those in *Barot*. Plaintiff correctly mailed the documents to the Post Office Box of the Ministry of Foreign Affairs in Sudan. But, he neither identified the name nor the title of the Minister of Foreign Affairs of Sudan on the mailings. *See* Dkt. 4 (Aff. Requesting Foreign Mailing to ABS); Dkt. 6 (Aff. Requesting Foreign Mailing to Ministry of Agric. and Forests); Dkt. 7 (Aff. Requesting Foreign Mailing to Central Bank of Sudan). Under the requirements set forth in *Barot*, this does not strictly comply with § 1608(a)(3).

The Court, nevertheless, concludes that dismissal is not warranted. Even "[i]f a party has not complied with the service of process requirements . . . , the Court . . . has the power to . . . 'direct that service be effected within a specified time.'" *Candido*, 242 F.R.D. at 164 (emphasis added) (quoting Fed. R. Civ. P. 4(m)). Indeed, the D.C. Circuit has cautioned that "dismissal is *not* appropriate where there exists a reasonable prospect that service can be obtained." *Barot*, 785 F.3d at 29 (emphasis added) (quoting *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983)). *Barot* is again instructive. In that case, the D.C. Circuit held that it was an abuse of discretion to dismiss for insufficient service of process when (1) the service attempt "came very close to satisfying the Act's requirements . . . [thus] showing good faith;" (2) "the statute of limitations [had] run on [the plaintiff's] claims;" and (3) "[the defendant] [had] identified no particular prejudice it would suffer if [Plaintiff] were permitted another opportunity to make proper service." *Id.* at 29. At least two of the same considerations weigh against dismissal in this case. Plaintiff's attempt at service came "very close" to satisfying § 1608(a)(3)—as in *Barot*, "[t]he defect . . . came down to one line of the address block: it should have said "Head of the Ministry of Foreign Affairs" instead of the name of each defendant. *Id.* Moreover, defendants fail to identify any prejudice that would result from allowing Plaintiff to perfect

service.[2]  As such, it would neither further the interests of fairness nor judicial economy to force Plaintiff to refile its case.

The Court will, accordingly, direct that Plaintiff promptly effect service on ABS in strict compliance with § 1608(a)(3) by addressing its mailing to the "Head of the Ministry of Foreign Affairs" in Khartoum, Sudan, "whether identified by name or title, and not to any other official or government agency." *Barot*, 785 F.3d at 29, 30.  Because the Court lacks personal jurisdiction over ABS at this point, *see Candido*, 242 F.R.D. at 160, the Court will refrain from addressing whether Plaintiff has stated a claim for breach of contract.

2. *Commercial Activity Exception*

ABS further contends that the Court lacks subject-matter jurisdiction because the institutional defendants are entitled to sovereign immunity.  Dkt. 12-1 at 18–19.  The Court is unconvinced with respect to ABS but agrees that it lacks subject-matter jurisdiction over Plaintiff's breach-of-contract claim against the Central Bank of Sudan and the Ministry of Agriculture and Forests.

The FSIA does not protect foreign states and their instrumentalities with blanket immunity.  Rather, as defendants correctly observe, entering into, and allegedly breaching, a retainer agreement is "a commercial activity [that] vests the court with subject-matter jurisdiction pursuant to the commercial activity exception of the FSIA."  Dkt. 13 at 12; *see also* 28 U.S.C. § 1605(a)(2).  As the Supreme Court held in *Saudia Arabia v. Nelson*, 507 U.S. 349 (1993), a "foreign state engages in commercial activity . . . where it exercises only 'those powers that can also be exercised by private citizens,' as distinct from those 'powers peculiar to sovereigns.'" *Id.*

---

[2]  Although neither party addresses whether Plaintiff would face any time-bar if required to refile its complaint, the Court can discern no utility that would be achieved by requiring Plaintiff to do so.

10

at 360 (citation omitted).  In determining whether the commercial activity exception to the FSIA applies, the Court must ascertain "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type of actions* by which a private party engages in 'trade and traffic or commerce.'"  *Id.* at 360–61 (emphasis added) (quoting *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992)).  The Supreme Court held in *Republic of Argentina v. Weltover*, for example, that Argentina was not immune from suit for deferring payment on government-issued bonds—even though the bonds were created "to address a domestic credit crisis"—because "[t]here is . . . nothing distinctive" about issuing debt instruments.  504 U.S. at 615, 616.

In light of this precedent, the Court has no difficulty concluding that entering into a retainer agreement with legal counsel falls under the commercial activity exception to the FSIA.  Hiring a lawyer is something that private parties can, and often do, do.  Moreover, even assuming that the ultimate purpose of obtaining legal counsel, in this case, was to "assist with . . . governmental functions," Dkt. 12-1 at 19, that premise does not change the character of the relevant activity, *see* 28 U.S.C. § 1603(d) ("The commercial character of an activity shall be determined by reference to the nature of the course of conduct . . . rather than . . . its purpose.").  This Court has repeatedly held that a "contract for the provision of legal services constitutes 'commercial activity' under section 1605(a)(2)."  *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 159 (D.D.C. 2013); *Dentons US LLP v. Republic of Guinea*, 134 F. Supp. 3d 5, 9 (D.D.C. 2015) (quoting same); *see also Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17, 28 (D.D.C. 2017); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 901 F. Supp. 2d 136, 141 (D.D.C. 2012); *Reichler, Milton & Medel v. Republic of Liberia*, 484 F. Supp. 2d 1, 2 (D.D.C. 2007).  And, there is nothing about this case that counsels

in favor of a different result. The Court, accordingly, concludes that it has subject-matter jurisdiction over Plaintiff's breach-of-contract claim against ABS.

The same reasoning, however, does not extend to Plaintiff's claims against the Central Bank of Sudan and the Ministry of Agriculture and Forests. ABS argues that those defendants were not party to the retainer agreement. Dkt. 12-1 at 18. Plaintiff does not contest this assertion; instead, it merely contends that "the Ministry of Agriculture and the Central Bank of Sudan both played roles in the lack of payment of plaintiff's fees." Dkt. 13 at 14. Absent a contract between the parties, however, Plaintiff has failed to allege that the Central Bank of Sudan or the Ministry of Agriculture and Forests engaged in any "commercial activity" that falls under the commercial activity exception to the FSIA. 28 U.S.C. § 1605(a)(2). The Court will, accordingly, dismiss those two defendants from this case for lack of subject-matter jurisdiction.

**B.     Ahmed's Motion to Dismiss**

Defendant Ahmed has filed a separate motion to dismiss on three grounds: (1) Plaintiff failed to serve him as an individual pursuant to Rule 4(f) of the Federal Rules of Civil Procedure; (2) Plaintiff failed to serve him in his official capacity pursuant to § 1608(a)(3); and (3) he is not a "part[y] to the Agreement, and . . . should [therefore] be dismissed from the case immediately." Dkt. 14-1 at 7. As with ABS, the Court agrees that Plaintiff has yet to perfect service, but it will provide Plaintiff with a further opportunity to do so.

*First*, contrary to Ahmed's assertion, Plaintiff was not required, pursuant to the Federal Rules of Civil Procedure, to "deliver[] a copy of the summons and complaint to [him], personally" or to "use[] a form of mail that the clerk addressed" to him personally. *Id.* at 6 (citing Fed. R. Civ. P. 4(f)(2)(C)). Rule 4(f) is inapposite because, as Plaintiff repeatedly emphasizes, "the Complaint does not assert any claims against [Ahmed] in his personal

capacity."[3] Dkt. 32 at 5. Rather, Plaintiff alleges that Ahmed was an agent of ABS who "contacted [Plaintiff] . . . for the retention of legal services," "signed the Retainer Agreement in his capacity as the General Manager of the [ABS]," and "subsequently failed . . . to authorize or make payment as the General Manager of the [ABS]." *Id.*; *see also* Dkt. 1 at 1, 3, 6, 9 (Compl. ¶¶ 6, 17, 28). Accordingly, Plaintiff properly attempted service on Ahmed in his official capacity pursuant to § 1608 of the FSIA.

Ahmed contends that the service requirements under the FSIA cannot apply here because he "does not meet the definition of [an] agency of a foreign state." Dkt. 14-1 at 5. That argument flies in the face of D.C. Circuit precedent. In *Junquist v. Sheikh Sultan Bin Khalida Al Ahyan*, 115 F.3d 1020 (D.C. Cir. 1997), the Court of Appeals expressly held that "[i]ndividuals acting in their official capacities are considered 'agenc[ies] or instrumentalit[ies] of a foreign state.'" *Id.* at 1027.

*Second*, for reasons explained above, the Court declines to dismiss the claim against Ahmed even though Plaintiff served the required documents on "Salah Eldin Hassan Ahmed," Dkt. 5 (Aff. Requesting Foreign Mailing to Ahmed), instead of on "the head of the ministry of foreign affairs," as required by 28 U.S.C. § 1608(a)(3). The Court, will, however, direct that Plaintiff promptly serve Ahmed in strict compliance with § 1608(a)(3) by "sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and

---

[3] Plaintiff argues that Ahmed waived his objections to service by failing to raise them in the defendants' initial motion to dismiss, Dkt. 12. *See* Dkt. 32 at 3–4 (citing Fed. R. Civ. P. 12(h)(1)(A)). The Court notes, however, that ABS did argue improper service on behalf of Ahmed in his official capacity. To the extent Ahmed intends to direct this argument at Plaintiff's failure to serve him in his personal capacity, that contention is disposed of by Plaintiffs disavowal of any intent to bring such a claim. *See* Dkt. 32 at 5.

13

dispatched by the clerk of the court *to the head of the ministry of foreign affairs* of the foreign state concerned." *Id.* (emphasis added).

*Third*, and finally, the Court declines to reach the merits of whether Plaintiff has stated a claim against Ahmed because, absent proper service, the Court lacks personal jurisdiction over Ahmed at this time. The Court, notes however, that Plaintiff has made clear that it is suing Ahmed, who signed the retainer agreement as General Manager of ABS, in his official capacity. *See* Dkt. 32 at 5. Although the Court questions whether Plaintiff can state a claim for breach of contract against an employee or officer of ABS—even one acting in his official capacity—the Court will wait to address that merits issue until after Plaintiff properly serves Ahmed, should Plaintiff do so.[4]

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the institutional defendants' motion to dismiss, Dkt. 12, is **GRANTED** with respect to the Central Bank of Sudan and the Ministry of Agriculture and Forests and **DENIED** with respect to ABS; it is further

**ORDERED** that the Clerk's entry of default against the Central Bank of Sudan, Dkt. 23, and the Ministry of Agriculture and Forests, Dkt. 22, is **VACATED**; it is further

**ORDERED** that the Central Bank of Sudan and the Ministry of Agriculture and Forests are **DISMISSED** from this case; it is further

**ORDERED** that Defendant Ahmed's motion to dismiss, Dkt. 14, is **DENIED**; it is further

---

[4] Ahmed also argues for the first time in his reply brief—in one sentence—that he is entitled to sovereign immunity because "[t]here is no claim that any exception to sovereign immunity applies in his case." Dkt. 33 at 2. Assuming that Plaintiff's claim posits that Ahmed was somehow party to the contract, the Court concludes that the commercial activity exception applies to Plaintiff's claim against him.

14

**ORDERED** that Plaintiff shall serve ABS and Ahmed, as soon as practicable, in strict compliance with the requirements set forth in 28 U.S.C. § 1608(a)(3) and with this Court's opinion. Unless service is effected within forty-five (45) days, Plaintiff shall file a report with the Court on or before March 8, 2019, explaining why service has not been effected.

**SO ORDERED.**

    /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: January 16, 2019