UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAW OFFICES OF ARMAN DABIRI &
ASSOCIATES P.L.L.C.,

    *Plaintiff*,

    v.

AGRICULTURAL BANK OF SUDAN, *et al.*,

    *Defendants*.

Civil Action No. 17-2497 (RDM)

## MEMORANDUM OPINION AND ORDER

In this case, a law firm is suing one of its former clients for $200,000 in unpaid fees. Their dispute is now before the Court on dueling dispositive motions. Plaintiff, the Law Offices of Arman Dabiri & Associates, P.L.L.C. ("Dabiri"), seeks summary judgment under Federal Rule of Civil Procedure 56. Dkt. 53. Defendant, the Agricultural Bank of Sudan ("ABS"), moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. 50.

For the reasons that follow, both motions will be **DENIED**.

### I. BACKGROUND

For purposes of the pending motions, the following facts are uncontested, except as otherwise noted. In March 2017, ABS contacted Dabiri seeking legal representation and counsel in the United States. Dkt. 1 at 6 (Compl. ¶ 17). At the time, the United States was "loosening . . . sanctions against Sudan," which had long been designated as "a State Sponsor of Terrorism," "on a probationary basis." *Id.* at 4, 6 (Compl. ¶¶ 10, 16). On April 27, 2017, ABS sent Dabiri a "Letter of Interest," seeking legal assistance "establishing relationships with the USA and US financial [institutions]" and "completing the removal of [US] sanctions." *Id.* at 6 (Compl. ¶ 18)

(second alteration in original).  Accordingly, on May 5, 2017, ABS and Dabiri "executed a Retainer Agreement," *id.* at 7 (Compl. ¶ 19), which set forth the following terms:

> 1. Counsel will provide the following services to ABS:
>
>    a. Serve as the attorney of record and provide legal services in connection with achieving the above state[d] goals for ABS.
>
>    b. Serve as legal Counsel in any meeting or negotiations between ABS and the United States Government or any of its departments and/or agencies.
>
>    c. Serve as legal Counsel in drafting any necessary agreements, accords, treaties or understandings between ABS and the United States Government or any of its departments and/or agencies.
>
>    d. Serve as legal counsel in any meeting or negotiations with US financial institutions.
>
>    [e]. Serve as legal Counsel in negotiating, reviewing, drafting/editing of necessary contracts or agreements with US financial institutions.
>
>    [f]. Serve as legal Counsel in any disputes between ABS and the United States Government or any of its departments and/or agencies.
>
>    [g]. Serve as legal Counsel in any disputes between ABS and US financial institutions and entities.

Dkt. 53-2 at 2 (Ex. A); *see also* Dkt. 53-1 at 1 (Pl.'s SUMF ¶ 1).  The agreement also included a provision captioned "computation of fees," which provided:

> 3. In consideration for the services rendered and to be rendered on ABS's behalf by Counsel, the ABS hereby agrees to pay a lump sum agreed upon fee.  The factors to be considered as guides in determining the reasonableness of a fee and agreed upon and understood by the ABS are set out in the District of Columbia Rules of Professional Conduct as well as the following:
>
>    a. The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal services promptly.
>
>    b. The likelihood that the acceptance of the particular employment will preclude other employment by the Counsel.

2

   c.  The fee customarily charged in the locality for similar services.

   [d.]  The time limitations imposed by ABS or by the circumstances.

   [e.]  The nature and length of the professional relationship with ABS.

4. Counsel will require a retainer of $200,000 USD. The retainer fee will be due immediately to Counsel upon the execution of the "Retainer Agreement" in the manner provided for in attached Appendix A to this Agreement.

   —  Counsel presently uses the hourly fee schedule below as a factor in determining a reasonable fee:

    Arman Dabiri:  $800/hour

Dkt. 53-2 at 3–4 (Ex. A); *see also* Dkt. 53-1 at 1–2 (Pl.'s SUMF ¶¶ 2–3). Each page of the Retainer Agreement bears the stamp of the General Manager of ABS. Dkt. 53-2 at 2–5 (Ex. A).

  Dabiri alleges that, after signing the agreement, it "immediately" began to work on "establishing . . . a banking relationship between ABS and US financial institutions" and "continu[ing] the easing of sanctions against Sudan." Dkt. 1 at 7 (Compl. ¶ 20). In doing so, Dabiri allegedly: (1) "undertook an extensive review of all sanctions as well as all litigation against Sudan including cases by U.S. plaintiffs against Sudan under the terrorism exception to the Foreign Sovereign Immunities Act;" (2) prepar[ed] for an anticipated trip by various Sudanese officials to Washington, D.C.;" and (3) "establish[ed] a banking relationship with an identified US Bank for purposes of several anticipated contracts with US companies specializing in irrigation and agricultural equipment." *Id.* at 7–8 (Compl. ¶¶ 21–22).

  Although ABS "cooperated" with Dabiri from May to July 2017 by "providing the necessary documents for establishing [a] financial and a banking relationship with an identified US Bank," *id.* at 8 (Compl. ¶ 22), the relationship soon soured. ABS allegedly informed Dabiri that its payment of the $200,000 retainer would be temporarily delayed "due to alleged problems

with obtaining hard currency from the Central Bank of Sudan." *Id.* (Compl. ¶ 23). Nevertheless, ABS allegedly "requested" that Dabiri continue its work "based on promises and assurances that payment pursuant to the retainer agreement would be forthcoming." *Id.* No payments ever came, however, even after Dabiri allegedly established "a full banking relationship . . . between ABS and a US Banking institution" on July 7, 2017. *Id.* at 9 (Compl. ¶ 24). Instead, according to Dabiri, "ABS (and its designated agent) . . . provid[ed] contradictory information regarding the timing of payment," *id.* (Compl. ¶ 25), and, eventually, "stopped responding to" Dabiri despite "several reports and demand letters" that Dabiri sent between July and September 2017, *id.* (Compl. ¶ 26).

On September 14, 2017, Dabiri received a letter from another law firm stating: "ABS is our client, and you have been terminated." Dkt. 57-1 at 2 (Ex. 1). The following day, Dabiri sent a final demand letter "for the outstanding fees pursuant to the retainer agreement to the General Manager of the ABS as well as the newly appointed Minister of Agriculture and Forests in Sudan." *Id.* (Compl. ¶ 28). Allegedly receiving no response, Dabiri filed this lawsuit on November 1, 2017, for breach of contract, seeking a total of $200,000 plus interest. *Id.* at 10 (Compl. ¶ 29).

Dabiri's Complaint named ABS, the Central Bank of Sudan, the Ministry of Agriculture and Forests, and Salah Edin Hassan Ahmed, the General Manager of ABS as Defendants. *Id.* at 1 (Compl.). Each Defendant moved to dismiss the Complaint. Dkt. 12; Dkt. 14. On January 16, 2019, the Court granted in part and denied in part Defendants' motions to dismiss. Dkt. 34. The Court dismissed the claims against the Central Bank of Sudan and the Ministry of Agriculture and Forests but declined to dismiss the claims against ABS and Ahmed. *Id.* at 14–15. The Court further held that Dabiri had not properly served ABS and Ahmed but permitted Dabiri to make

4

further efforts to effect proper service upon both parties within forty-five days of the Court's order. *Id.* Dabiri has since served ABS, Dkt. 47, but not Ahmed.

ABS has now moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Dkt. 50 at 1, and Dabiri has cross-moved for pre-discovery summary judgment under Federal Rule of Civil Procedure 56, Dkt. 53. The parties' motions are fully briefed and ripe for the Court's consideration. For the following reasons, both motions will be denied.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the allegations contained in the complaint. A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). If the complaint's allegations fail to meet this standard, the court must dismiss the action. *Id.*

B.     Rule 56

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if it can "show[ ] that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is "material" if it could affect the outcome of the litigation under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *See Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

If the moving party carries this initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving party's favor with respect to the "element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)).  The nonmoving party's opposition, accordingly, must consist of more than unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.  That is, once the moving party carries its initial burden on summary judgment, the nonmoving party must provide evidence that would permit a reasonable jury to find in its favor.  *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir.

6

1987). If the nonmoving party's evidence is "merely colorable" or "not significantly probative," the Court should grant summary judgment. *Liberty Lobby*, 477 U.S. at 249–50.

### III.  ANALYSIS

**A.    Choice of Law**

When a Foreign Sovereign Immunities Act plaintiff brings suit "[i]n the absence of a federal cause of action," as Dabiri has in this case, "the Court must first consider what law applies." *Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 372 (D.D.C. 2020); *see also Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009). To do so, "the Court must apply the choice of law rules of the forum state"—here, the District of Columbia. *Force*, 464 F. Supp. 3d at 372. Under the D.C. choice of law rules, "courts [are to] enforce express contractual choice of law provisions as long as there is some reasonable relationship with the state specified." *Orchin v. Great-W. Life & Annuity Ins. Co.*, 133 F. Supp. 3d 138, 146 (D.D.C. 2015) (internal quotation marks and citations omitted); *see also Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995); *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980).[1]

The Retainer Agreement between Dabiri and ABS states that it "shall be governed and interpreted in accordance by the laws of the District of Columbia." Dkt. 53-2 at 4 (Ex. A). Courts have held that a "reasonable relationship" exists for purposes of choice-of-law analysis if one of the parties to the litigation "is based in the District of Columbia." *Whiting v. AARP*, 637

---

[1] Courts may decline to enforce contractual choice of law provisions that contravene a "fundamental policy" of a state with "a materially greater interest than the chosen state." Restatement (Second) of Conflicts of Law § 187(2). Maryland common law—"to which [D.C.] commonly looks for guidance in the absence of its own precedents," *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1171 (D.C. Cir. 2003)—recognizes this exception, *see, e.g.*, *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 650 A.2d 246, 249 (Md. 1994). Here, neither party addresses what choice of law applies, let alone asks the Court to invoke the fundamental-policy exception to the Retainer Agreement's choice-of-law provision.

F.3d 355, 361 (D.C. Cir. 2011); *see also Aneke v. Am. Exp. Travel Related Servs., Inc.*, 841 F. Supp. 2d 368 (D.D.C. 2012) (applying Utah law where the defendant was based in Utah); *Leitner-Wise v. Koniag, Inc.,* 798 F. App'x 672, 673 n.1 (D.C. Cir. 2020) (reasonable-relationship test satisfied where party to an agreement "was a Virginia corporation" and choice-of-law provision selected Virginia law); *Ladd v. Chemonics Intern., Inc.*, 603 F. Supp. 2d 99, 115 n.11 (D.D.C. 2009) (applying D.C. law where defendant's principal place of business was in D.C. and the employment agreement specified that D.C. law would apply).  Here, Dabiri "exist[s] under the laws of, and do[es] business in, the District of Columbia." Dkt. 1 at 2 (Compl. ¶ 2).  That is sufficient to satisfy the reasonable-relationship test.  Accordingly, the Court will address the parties' dispute under D.C. law.

**B.    Retainer Fees**

In order to state a claim for breach of contract under District of Columbia law, a plaintiff must allege: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).  The question here is whether ABS's failure to tender the full $200,000 retainer payment to Dabiri constitutes a breach of the Retainer Agreement.  For the reasons that follow, the Court concludes that Dabiri has failed to carry its burden of showing that ABS breached the Retainer Agreement as a matter of undisputed fact.

"The District of Columbia, like other jurisdictions, wants clients to 'compensate attorneys reasonably,' as a matter of 'fundamental fairness.'" *King & King, Chartered v. Harbert Int'l, Inc.*, 503 F.3d 153, 156 (D.C. Cir. 2007) (quoting *Connelly v. Swick & Shapiro, P.C.*, 749 A.2d 1264, 1267–68 (D.C. 2000)).  "It cannot be reasonable," the D.C. Court of Appeals has explained, for an attorney "to demand payment for work that [it] has not in fact done." *In re*

*Ekekwe-Kauffman*, 210 A.3d 775, 792 (D.C. 2019) (citing *In re Cleaver-Bascombe*, 892 A.2d 396, 403 (D.C. 2006)). Consequently, "when an attorney receives payment of a flat fee at the outset of a representation, the payment is an 'advance[ ] of unearned fees' and 'shall be treated as property of the client . . . until earned.'" *In re Mance*, 980 A.2d 1196, 1202 (D.C. 2009), as amended (Oct. 29, 2009) (quoting D.C. R. Prof. Conduct. 1.15(d)). "Such a fee is earned only to the degree that the attorney actually performs the agreed-upon services." *Id.* (internal quotation marks and citation omitted).

It is true that "[e]ngagement retainers," in contrast to flat fees, "are earned when received." *Id.* Dabiri thus argues that the fee here—"a *retainer* of $200,000.00," Dkt. 53-2 at 4 (Ex. A) (emphasis added)—was owed at the time of the contract's signing. But, as explained by the D.C. Bar Legal Ethics Committee,[2] there are two types of retainer agreements: "a special retainer, which is a species of fee advance, or a general retainer, [which] . . . does not involve an advance fee but a fee that is fully earned when paid." D.C. Bar Ass'n Comm. on Legal Ethics, Op. 264 (1996) ("Opinion 264") (internal quotation marks and alterations omitted). The difference between the two is critical: "[A] general retainer is . . . [a] fee [that] secures the lawyer's availability to perform legal services during a specified period, a commitment that normally requires the lawyer to forego other representations and commit exclusively to the cause of the retaining client." *Id.* It is "paid solely for availability and a promise of exclusivity[] and is not related to time expended on a particular matter." *Id.*; *see also T-Mobile US*, 2015 WL

---

[2] "Although not binding, Opinions of the D.C. Bar Legal Ethics Committee provide valuable guidance and have been cited favorably by our Court of Appeals and the District of Columbia Court of Appeals." *Telecomms. Law Pros. PLLC v. T-Mobile US, Inc.*, No. 13-cv-1178, 2015 WL 13159051, at *5 n.3 (D.D.C. Jan. 12, 2015) (citing *In re Kagan*, 351 F.3d 1157, 1164, n.7 (D.C. Cir. 2003); *Griva v. Davidson*, 637 A.2d 830, 840 n.10 (D.C. 1994)); *see also In re Mance*, 980 A.2d 12 at 1202 (favorably citing Opinion 264).

9

13159051, at *4 ("The only fee a lawyer may earn upon receipt is an engagement retainer (also called a general retainer), which is a 'fee paid, apart from any other compensation, to ensure that a lawyer will be available for the client if required.'" (quoting *In re Mance*, 980 A.2d at 1202)). "By contrast, a special retainer is an advance fee payment that is consumed by the performance of legal services." Opinion 264. "Such a retainer is not earned upon receipt but rather is tied to the performance of services." *Id.* (quotation marks omitted). "Special retainers may take many forms, including an advance to be applied against hourly rates or a flat fee designed to cover provision of specified legal services." *Id.* at n.4.

The Retainer Agreement in this case lacks "the classic element[s] of a nonrefundable general retainer." *Id.* First, "[i]t is difficult to understand how [ABS], under [the Agreement], could preclude a rival or competitor from also retaining [Dabiri] for . . . representation during the relevant period, in the absence of a conflict of interest." *Id.* The Agreement nowhere requires Dabiri "commit its time and resources exclusively to a particular client[] or forego any opportunities for further representation during the period in question." *Id.* Second, while the Agreement uses the word "retainer," Dkt. 53-2 at 4 (Ex. A), "merely stating in a contract that the retainer fee is a general retainer or nonrefundable does not necessarily make it so," Opinion 264. Rather, "[i]n order to be considered a true general retainer . . . there must be a clear indication that the retainer fee in fact is being paid to secure the exclusive availability of the lawyer or firm and is not intended to pay for specific services to be rendered." *Id.* That "clear indication" is missing here. *Id.* Finally, Dabiri itself characterizes the $200,000 fee as "a flat fee lump sum structure for legal services for $200,000," further indicating that the Retainer Agreement contemplated a special, not general retainer. Dkt. 1 at 7 (Compl. ¶ 19); *see also* Dkt. 51 at 8 (Dabiri's motion papers explaining that "the terms of the Agreement []govern[ed] the

10

relationship for representation and a lump sum fee structure between Plaintiff and ABS"); Dkt. 53-1 at 1–2 (Pl.'s SUMF ¶ 2) ("ABS, in consideration for services rendered and to be rendered by Plaintiff[,] agreed to pay a lump sum fee." (internal quotation marks omitted)).

So viewed, the $200,000 fee is best understood as a special retainer to which Dabiri is not entitled without regard to the work actually performed. Rather, special retainers, essentially flat fees, must be earned. *See* Opinion 264 ("[A] client is not liable for the full amount of a special retainer designed to encompass services that have not yet been rendered."). Dabiri's motion for summary judgment—filed before discovery in this matter—does not, however, adduce any evidence that Dabiri earned the full $200,000 retainer payment. Dabiri's statement of undisputed material facts, for instance, fails to say anything at all about what work Dabiri performed. Dkt. 53-1. And the only exhibit Dabiri filed in support of its motion is a copy of the Retainer Agreement itself. Dkt. 53-2. Without any evidence that Dabiri earned the retainer payment, the Court must, accordingly, deny Dabiri's motion for summary judgment, Dkt. 53.

Nor can the Court grant ABS's motion to dismiss. Dabiri alleges that it performed services but was not paid fees, Dkt. 1 at 7–9 (Compl. ¶ 20–22, 24), and the parties have not addressed whether *that* constitutes a breach of the Retainer Agreement, irrespective of whether the $200,000 retainer was immediately owed as a general retainer. D.C. law, moreover, recognizes that "[a] lawyer's normal remedy for unpaid fees lies in *quantum meruit*." *T-Mobile US*, 2015 WL 13159051, at *5 (first alteration added, internal quotation marks and subsequent alteration omitted); *see also Robinson v. Nussbaum*, 11 F. Supp. 2d 1, 5 (D.D.C. 1997) ("[D]ischarged attorney's recovery is limited to quantum meruit, or the reasonable value of the services already performed."). Yet the parties have also failed to address whether Dabiri's

11

Complaint states a viable *quantum meruit* claim.[3]  Without addressing these issues, dismissal of Dabiri's Complaint would be premature.  Accordingly, ABS's motion to dismiss will be denied.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Dabiri's motion for summary judgment, Dkt. 53, and ABS's motion to dismiss, Dkt. 50, are **DENIED**; it is further

**ORDERED** that Plaintiff shall show cause, on or before March 29, 2021, why its claim against Salah Edin Hassan Ahmed should not be dismissed for failure to effect service as previously ordered by the Court and as required by the FSIA; and it is further

**ORDERED** that the parties shall appear by telephone for a status conference to address further proceedings in this matter on April 8, 2021 at 12:15 p.m.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 9, 2021

---

[3]  To be sure, Dabiri's Complaint raises a breach-of-contract claim without mentioning *quantum meruit*.  Dkt. 1 at 10 (Compl. ¶ 29).  It is unclear, however, whether that dooms the claim.  On the one hand, "a request for quantum meruit . . . is a measure of damages and not a legal theory of recovery." *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 176 (D.C. 1996) (internal quotation marks omitted).  On the other hand, the D.C. Court of Appeals has described "[q]uantum meruit [a]s an equitable remedy which permits recovery by a party for services or materials provided—*despite the absence of an express contract*." *Prince Const. Co. v. D.C. Contract Appeals Bd.*, 892 A.2d 380, 382 n.1 (D.C. 2006) (emphasis added).  The parties shall address this issue in any future dispositive motions filed.