UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAW OFFICES OF ARMAN DABIRI &
ASSOCIATES P.L.L.C.,

*Plaintiff*,

v.

AGRICULTURAL BANK OF SUDAN,

*Defendant*.

Civil Action No. 17-2497 (RDM)

**MEMORANDUM OPINION**

A D.C. law firm, the Law Offices of Arman Dabiri & Associates ("Dabiri"), brings this action against one of its former clients, the Agricultural Bank of Sudan ("ABS"), alleging claims for breach of contract and unpaid fees. Dkt. 62 at 1 (Am. Compl. ¶ 1). Now before the Court is Dabiri's motion for entry of a default judgment, Dkt. 86, and supplement thereto, Dkt. 87.[1] The Court previously construed Dabiri's motion, Dkt. 86; Dkt. 87, as seeking both an entry of default *and* a default judgment. *See* Dkt. 88 at 1. At that time, the Court deferred ruling on Dabiri's motion for entry of a default judgment, but entered a default against ABS. *See id.* at 4. For the reasons that follow, the Court now **GRANTS** Dabiri's motion for entry of a default judgment against ABS.

**I. BACKGROUND**

The Court provided a detailed summary of the background of this action in its decision denying Dabiri's motion for summary judgment and ABS's motion to dismiss, *Law Offices of*

---

[1] As the Court explained in its memorandum opinion entering default, although captioned as a separate motion, Dkt. 87 is best understood as a supplemental submission. *See* Dkt. 88 at 1 n.1.

*Arman Dabiri & Assocs. P.L.L.C. v. Agricultural Bank of Sudan*, 2021 WL 918080, at *1–3 (D.D.C. Mar. 9, 2021) ("*Dabiri III*"), and will not repeat that summary here. In its memorandum opinion entering the default against ABS, moreover, the Court explained how ABS has abandoned this litigation. Dkt. 88 at 1–3. Because the Court previously granted Dabiri's motion for entry of default, *id.* at 4, all that remains to resolve is whether the Court should also enter a default judgment and, if so, in what amount.

## II. LEGAL STANDARD

The entry of a default judgment "is not automatic." *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). Before doing so, the Court must, at a minimum, satisfy itself that it has subject matter jurisdiction over the claims at issue and personal jurisdiction over the defendants. *See Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014); *Mwani*, 417 F.3d at 6. This case is governed by the Foreign Sovereign Immunities Act ("FSIA") because ABS is an instrumentality of the Republic of Sudan. *See Law Offices of Arman Dabiri & Assocs. P.L.L.C. v. Agricultural Bank of Sudan*, 2019 WL 231753, at *3 (D.C.C. Jan. 16, 2019) ("*Dabiri II*"). The FSIA's "'interlocking provisions' . . . compress subject-matter jurisdiction and personal jurisdiction into a single, two-pronged inquiry: (1) whether service of the foreign state was accomplished properly, and (2) whether one of the statutory exceptions to sovereign immunity applies." *Abur v. Sudan*, 437 F. Supp. 2d 166, 172 (D.D.C. 2006) (quoting *Mar. Int'l Nominees Establishment v. Guinea*, 693 F.2d 1094, 1099 (D.C. Cir. 1982)).

Under the FSIA, the Court's discretion to enter a default judgment is further circumscribed; the Court may not enter a default judgment against a foreign state or instrumentality "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). "This requirement 'imposes a duty on FSIA

courts to not simply accept a complaint's unsupported allegations as true, and obligates courts to inquire further before entering judgment against parties in default.'" *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 28 (D.D.C. 2012) (quoting *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010)). In evaluating whether a plaintiff has adequately supported its claim, the Court may accept the plaintiff's uncontroverted factual allegations if they are supported by some evidence. *See Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 49 (D.D.C. 2012). Live testimony is not required. *See also Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 20 (D.D.C. 2009) ("In default judgment cases, plaintiffs may present such evidence in the form of affidavits or declarations rather than through live witnesses testifying in open court.").

### III. ANALYSIS

The Court first concludes that service was accomplished properly and that the FSIA's commercial activity exemption to sovereign immunity applies. The Court next turns to the merits of Dabiri's claim.

With respect to service of process, the Court initially held that Dabiri had not properly served ABS but permitted Dabiri to make further efforts to effect proper service within forty-five days of the Court's order. *See Dabiri II*, 2019 WL 231753, at *8. As the Court noted in its subsequent opinion, Dabiri properly effected service on ABS within that window. *See Dabiri III*, 2021 WL 918080, at *3; *see also* Dkt. 47. As for the relevant statutory exception, the Court previously observed that it has "no difficulty concluding that entering into a retainer agreement with legal counsel," as ABS did with Plaintiff, "falls under the commercial activity exception to the FSIA." *Dabiri II*, 2019 WL 231753, at *6; *see* 28 U.S.C. § 1605(a)(2). The Court remains convinced that the commercial activity exception applies.

Turning to the merits, Dabiri originally alleged that it was seeking to recover for breach of a retainer agreement and non-payment of attorneys' fees. Dkt. 1 at 2, 10 (Compl. ¶¶ 1, 29). In denying Dabiri's motion for summary judgment, the Court explained that whether ABS's failure to tender the full $200,000 retainer payment to Dabiri constituted a breach of the retainer agreement turned on a factual question—whether the retainer was a special retainer ("a species of a fee advance") or a general retainer (which does not involve a fee advance but instead is "fully earned when paid"). *Dabiri III*, 2021 WL 918080, at *5. Two months later, Dabiri filed an amended complaint. Dkt. 63. The amended complaint alleges a claim for "breach of contract of a retainer agreement for non-payment of attorney's fees for services rendered," Dkt. 63 at 1 (Am. Compl. ¶ 1), characterized as a claim for "*quantum meruit*," *id.* at 11 (Am. Compl. Count I), and a claim for unjust enrichment, *id.* at 12 (Am. Compl. Count II). Dabiri has since clarified that it "was engaged in the representation of one other client" during the relevant timeframe and "thus did not have a 'general' retainer with ABS." Dkt. 87 at 2.

"For a plaintiff to prevail in a FSIA default proceeding, the plaintiff must present a legally sufficient prima facie case." *Gates v. Syrian Arab Republic*, 580 F.Supp.2d 53, 63 (D.D.C. 2008). The elements of breach of contract under D.C. law, which governs the parties' dispute, are: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009); *see Dabiri III*, 2021 WL 918080, at *4–5 (explaining that D.C. law governs the parties' dispute).[2]

---

[2] A claim for *quantum meruit* typically cannot stand when there is an express written agreement between the parties regarding the same subject matter. *Dale Denton Real Estate, Inc. v. Fitzgerald*, 635 A.2d 925, 928 (D.C. 1993); *Standley v. Egbert*, 267 A.2d 365, 368 (D.C. 1970) ("*[Q]uantum meruit*[] is not applicable when compensation of the parties is covered by an

4

Here, ABS admitted (while still participating in the litigation) that it executed the retainer agreement,[3] and, in fact, attached the agreement to its motion to dismiss. Dkt. 12-2. The face of the document indicates, and no party has disputed that, it is a valid contract containing the necessary elements of offer, acceptance, and consideration. The Court, accordingly, finds that the retainer agreement constitutes a valid contract.

Although not a model of clarity, the retainer agreement includes several provisions relevant to the pending motion. First, it specifies that ABS would pay Dabiri "a lump sum agreed upon fee," and it sets forth the factors that the parties would consider "as guides in determining the reasonableness of a fee." Dkt. 86-1 at 3 (Retainer Agreement ¶ 3). One such factor was "[t]he fee customarily charged in the locality for similar legal services." *Id.* (Retainer Agreement ¶ 3c). Then, in the next section, the agreement provided that Arman Dabiri's current rate was $800 per hour. *Id.* at 4 (Retainer Agreement ¶ 4). The retainer agreement further provided that Dabiri would "require a retainer of $200,000 USD" and that the retainer fee would be "due immediately to [Dabiri] upon execution" of the agreement. *Id.* at 4 (Retainer Agreement ¶ 4). Finally, the agreement provided that ABS retained the right to terminate Dabiri at any time, but provided that "[s]uch termination" would not "relieve ABS of the obligation to pay for all services rendered and expenses paid or incurred on behalf of ABS prior to the date of such termination, or in connection with it." *Id.* at 4 (Retainer Agreement ¶ 9). ABS never paid Dabiri

---

express written contract."). *Quantum meruit* refers, after all, to an implied contractual or quasi-contractual duty. *TVL Assocs. v. A & M Constr. Corp.*, 474 A.2d 156, 159 (D.C. 1984). Thus, when the parties have reduced their agreement to an express writing there is ordinarily no need to go beyond its terms. *See Dale Denton*, 635 A.2d at 928. The Court therefore need not reach Dabiri's *quantum meruit* claim.

[3] *See* Dkt. 65 at 3 (Answer to Am. Compl. ¶ 19); Dkt. 78 at 1 (status report filed by ABS indicating that it would rely upon the answer filed at Dkt. 65).

any compensation for its services, despite repeated demand letters.  Dkt. 62 at 10 (Am. Compl. ¶ 34); Dkt. 86-2 at 4–5 (Dabiri Decl. ¶¶ 15–17).

The Court is persuaded that Dabiri is entitled to recover for the reasonable cost of the legal services it actually provided.  In its March 2021 opinion, the Court noted that the parties, at that time, "ha[d] not addressed whether [the nonpayment of fees] constitute[d] a breach of the [r]etainer [a]greement, irrespective of whether the $200,000 retainer was immediately owed as a general retainer."  *Dabiri III*, 2021 WL 918080, at *6.  The Court also observed that "D.C. law . . . recognizes that '[a] lawyer's normal remedy for unpaid fees lies in *quantum meruit*' . . . . Yet the parties ha[d] also failed to address whether Dabiri's Complaint states a viable *quantum meruit* claim."  *Id.* (quoting *Telecomms. Law Pros. P.L.L.C. v. T-Mobile US, Inc.*, 2015 WL 13159051, at *5 (D.D.C. Jan. 12, 2015)); *see also Robinson v. Nussbaum*, 11 F. Supp. 2d 1, 5 (D.D.C. 1997) ("[D]ischarged attorney's recovery is limited to *quantum meruit*, or the reasonable value of the services already performed.").  Dabiri's amended complaint, Dkt. 63 at 1, 11 (Am. Compl. ¶¶ 1, 38), and declarations, *see* Dkt. 86-2 at 4 (Dabiri Decl. ¶¶ 13, 16); Dkt. 87-1 at 2 (Dabiri Decl. ¶ 3), have resolved the Court's questions.  Those documents clarify that Dabiri is alleging that the nonpayment of fees itself constituted a beach of the retainer agreement, which entitled Dabiri to a reasonable fee for services rendered.  Understood in this light, the Court finds that ABS breached the retainer agreement and that Dabiri is entitled to an award of fees.

That leaves the question of the proper measure of the fees owed.  Under the terms of the retainer agreement, ABS agreed to pay a "lump sum agreed upon fee."  Dkt. 86-1 at 3 (Retainer Agreement ¶ 3).  Dabiri argues that the "[r]etainer [a]greement, as agreed to by ABS, provides for a rate of $800 per-hour fee for services."  Dkt. 87-1 at 2 (Dabiri Decl. ¶ 3).  ABS has not appeared to challenge that contention, and it is a plausible reading of the retainer agreement.  But

6

even if the retainer agreement is read to require proof that Dabiri's fees were reasonable, the Court finds that Dabiri has carried this modest burden, particularly given the contractual reference to that specific rate. *See* Dkt. 86-1 at 4 (Retainer Agreement ¶ 4). The Court, accordingly, finds that Dabiri is entitled to compensation at a rate of $800 per hour for the hours worked on behalf of ABS.

Dabiri has provided the Court with "estimates of time for services rendered," which Arman Dabiri "reconstructed from [his] notes, electronic files and records." Dkt. 87-1 at 1 (Dabiri Decl. ¶ 3). He estimates that he spent a total of 165 hours completing work for ABS, including time spent reviewing and analyzing relevant litigation against Sudan in American courts, communicating with the Department of State, working with U.S. Bank to establish a SWIFT protocol, and communicating with ABS. *Id.* at 1–2. The Court finds that Dabiri's time estimates are reasonable and will therefore enter a default judgment on Dabiri's breach of contract claim and award the firm the requested $132,000 in damages.[4]

---

[4] Dabiri's amended complaint states that it seeks "prejudgment and post judgment interest at the legal rate." Dkt. 63 at 11 (Am. Compl. ¶ 38). But neither request is mentioned in the pending motion. Dkt. 86; Dkt. 87. Without the benefit of briefing, the Court declines to decide whether Dabiri is entitled to prejudgment interest.

Dabiri also requests post-judgment interest. Dkt. 63 at 11 (Am. Compl. ¶ 38). Post-judgment interest may be awarded against a foreign sovereign when the court has jurisdiction under the FSIA. *See, e.g.*, *Dammarell v. Iran*, 404 F. Supp. 2d 261, 324 (D.D.C. 2005). Federal law provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court[,]" and that "[s]uch interest shall be calculated from the date of the entry of the judgment[.]" 28 U.S.C. § 1961(a). Application of § 1961(a) for post-judgment interest is mandatory. *See, e.g.*, *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 287 (D.D.C. 2012). The Court will therefore award post-judgment interest at the statutory rate.

Finally, Dabiri seeks attorneys' fees and costs, Dkt. 63 at 12, but does not brief these issues or provide any estimate of the fees and costs sought, *see* Dkt. 86; Dkt. 87. Because the Court cannot make a ruling on fees in the absence of legal argument and factual development, the Court will deny the request without prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for entry of judgment by default, Dkt. 86; Dkt. 87, is hereby **GRANTED**.  The Court awards Dabiri $132,000 for unpaid legal fees under the retainer agreement, plus post-judgment interest.  The Court **DENIES** without prejudice Dabiri's request for attorneys' fees and costs.

An order consistent with this memorandum opinion will issue separately.

    /s/ Randolph D. Moss
    RANDOLPH D. MOSS
    United States District Judge

Date:  December 11, 2023